IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| THAD THOMPSON, #A5013250, | ) NO. 1:18-cv-00098 DKW-KSC |
|---|---|
| Plaintiff, | ) ORDER DENYING IN FORMA |
| | ) PAUPERIS APPLICATION AND |
| vs. | ) DISMISSING ACTION |
| NURSE RISSA, et al., | ) |
| Defendants. | ) |

Before the court is pro se Plaintiff Thad Thompson's prisoner civil rights Complaint and in forma pauperis ("IFP") application. ECF Nos. 1, 2. Thompson alleges that nursing staff at the Halawa Correctional Facility ("HCF") have violated his constitutional rights and state law by providing him inadequate medical care since approximately September 2015.[1]

For the following reasons, Thompson's IFP application is DENIED pursuant to 28 U.S.C. § 1915(g) and this action is DISMISSED without prejudice.

## I. 28 U.S.C. § 1915(g)

Under 28 U.S.C. § 1915(g), a prisoner may not bring a civil action in federal court without first paying the filing fee if three or more of his civil actions or

---

[1] Thompson names as Defendants: Halawa Correctional Facility ("HCF") Nurses Rissa, Charlotte ("RN" and "NP"), Irina, Holly, and Vilma; the HCF Medical Dep't Supervisor; HCF Warden Scott Harrington; HCF; the Department of Public Safety; the City of Aiea; and the State of Hawaii.

appeals have been dismissed as frivolous, malicious, or for failure to state a claim on which relief may be granted.

Thompson has filed three federal civil actions while imprisoned that were dismissed for failure to state a claim.[2] *See* http://pacer.psc.uscourts.gov, PACER Case Locator (last visited Mar. 15, 2018); *see also Andrews v. King*, 398 F.3d 1113, 1120-21 (9th Cir. 2005) (stating "the district court docket records may be sufficient to show that a prior dismissal satisfies at least one of the criteria under § 1915(g) and therefore counts as a strike"). He has therefore accrued "3-strikes" under the statute.

The only exception to § 1915(g)'s three-strikes bar is if the pleadings show that plaintiff was in imminent danger of serious physical injury when he filed the complaint. 28 U.S.C. § 1915(g). Thompson may not proceed IFP unless his "complaint makes a plausible allegation that [he] faced 'imminent danger of serious physical injury' at the time of filing" his Complaint. *Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007).

---

[2] *See, e.g.*, *Thompson v. Dep't of Public Safety*, No. 1:17-cv-00250 DKW-KJM (D. Haw. Aug. 2, 2017) (dismissed for failure to state a claim); *Thompson v. Dep't of Public Safety*, No. 1:17-cv-00235 LEK-KSC (D. Haw. Aug. 1, 2017) (same); *Thompson v. Burns*, No. 2:13-cv-01715-PHX-SPL (D. Ariz. July 14, 2014) (same). Thompson was notified of these strikes in each case, and the court recently provided him copies of each dismissal order. *See Thompson v. Hamilton*, No. 1:17-cv-00520 JMS-RLP (D. Haw. Oct. 27, 2017).

## II. **THOMPSON'S CLAIMS**[3]

Three incidents form the bases of Thompson's claims. First, Thompson alleges that he was assaulted by a guard on intake at the Oahu Community Correctional Center ("OCCC") on September 2, 2014 before he transferred to HCF. Compl., ECF No. 1, PageID #10, ¶ 16. Thompson alleges that his lower back was injured during this assault and alleges that since he transferred to HCF in August 2015, Nurses Vilma, Rissa, and Holly "whine and complain" when he asks to see a medical provider. *Id.* at ¶ 17. He concedes that they schedule him for appointments, but complains that it "take[s] too long" to be seen, the medical providers are "inadequate," and they are often confused why they are seeing him. *Id.* Thompson has filed suit regarding this assault. *See Thompson v. Afamasaga*, 1:16-cv-00128-JMS-KSC (D. Haw. Mar. 21, 2017). Although he commenced the action pro se, Thompson is now represented by John Rapp, Esq. Trial is to commence on May 6, 2018.

Next, Thompson states that he had a panic attack and respiratory distress on November 22, 2017. Thompson was immediately taken to the medical unit and treated by Dr. Toyama. Dr. Toyama prescribed Thompson antibiotics and

---

[3] Thompson's allegations of fact are accepted as true and construed in the light most favorable to him. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

nebulizer "up-draft treatments" three times per day "as needed" for ninety days. *Id.*, PageID #8, ¶¶ 4-5. Dr. Toyama also gave Thompson a personal inhaler and recommended that he be "evaluated every morning" to determine whether nebulizer treatments were needed. *Id.*, ¶ 5. Thompson was transferred to the High Special Housing Unit ("SHU") on December 5, 2017. He says that he began experiencing difficulty receiving nebulizer treatments after this transfer. *Id.* at ¶ 6.

On December 8 and 10, 2017, Nurses Rissa and Holly refused to provide Thompson a nebulizer treatment when he requested one. *Id.*, PageID # 9, ¶¶ 7, 8, 11. On December 11, 2017, however, Thompson was given a chest x-ray; two days later he saw an unidentified doctor who "tried to take" him off the nebulizer treatments. *Id.*, ¶ 12. Thompson says they "got into a big debate" and this doctor allowed Thompson's "as needed" prescription to stand. *Id.* On December 17, 2017, and January 4, 2018, Nurse Irina denied Thompson a nebulizer treatment. *Id.* at ¶ 9.

On January 11, 2018, Thompson saw Defendant medical provider "N.P. Charlotte."[4] *Id.* at ¶ 13. Charlotte again authorized treatments only "as deemed needed," clarifying that this meant by the medical unit as determined by his blood

---

[4] Because Thompson refers to Charlotte interchangeably as "RN" and "N.P.," *see* Compl., ECF No. 1, it appears that Charlotte is a registered nurse practitioner.

oxygen levels and wheezing. *Id.* Thompson says that he agreed with this "change"[5] because of the difficulties involved in escorting him to the medical station while he was in the SHU and the inconvenience to the nurses. *Id.* He asked Charlotte for a stronger dose inhaler, but she denied this request. Thompson admits that normally "there is not any regular mucus and/or coughing," but "in instances of heightened breathing," he does cough and wheeze. *Id.* at ¶ 14. He says that his "lungs just feel damaged; like they are tra[u]matized and/or just too weak. It's like I can't do anything without breathing difficulty." *Id.*

Finally, Thompson says that he was assaulted by the HCF Swat team on December 21, 2017, injuring his neck, left shoulder, elbow, wrist, hand, and fingers. *Id.*, PageID #8, ¶ 1. Thompson complains that he was not evaluated immediately thereafter, nor "properly dealt with nor reasonabl[y] dealt with after the fact." *Id.* Thompson told Nurse Rissa that he was experiencing pain in his neck, wrist, and other areas, and requested a wrist brace on January 10 and 21, and February, 2, 3, 10, and 27, 2018. Nurse Rissa allegedly "snidely" told him that he was scheduled to see a medical provider, but that has yet to occur. *Id.* at ¶¶ 2-3.

---

[5]It appears that this was not a change but a clarification that "as needed" meant as determined by medical staff, not at Thompson's request.

## III. ANALYSIS

Although a court should not conduct an overly detailed inquiry into whether a particular danger is serious enough under the serious physical injury prong, *Cervantes*, 493 F.3d at 1055, the court is not required to "blindly accept a prisoner's allegations of imminent danger," *Taylor v. Watkins*, 623 F.3d 483, 485 (7th Cir. 2010). "[A]ssertions of imminent danger of less obviously injurious practices may be rejected as overly speculative or fanciful." *Cervantes*, 493 F.3d at 1057 n.11. Imminent danger of serious physical injury must be a real, present threat, not merely speculative or hypothetical. An inmate must provide specific "allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). "[V]ague and utterly conclusory assertions" of harm are insufficient. *White v. Colorado*, 157 F.3d 1226, 1231-32 (10th Cir. 1998). The "imminent danger" exception is available "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate." *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002); *Diaz v. Hurley*, 2017 WL 4876032 (E.D. Cal. Oct. 30, 2017) (revoking IFP status); *Pinson v. Frisk*, 2015 WL 738253, at *3 (N.D. Cal. Feb. 20, 2015) (denying IFP in light of speculative assertions of possible assault by other inmates).

First, Thompson's claims regarding his continuing pain from the incident at OCCC in 2014 do not amount to imminent danger of serious physical injury. Thompson has seen providers, been treated for his pain, and is currently seeking a judgment regarding this incident. Nothing suggests that he is in serious danger of further physical injury.

Second, Thompson's allegations regarding the denial of nebulizer treatments, particularly in light of his admission that three different medical providers determined he should have treatments "as needed" and as determined by medical staff, and his admission that he agreed with this course of treatment, do not show that he is in imminent danger of serious physical injury. To the contrary, the facts show that Thompson was immediately treated for his respiratory distress, evaluated regularly by nurses at the medical station, given a chest x-ray, and examined by at least two doctors and one nurse practitioner. Moreover, the HCF medical staff is not denying Thompson medical care for his respiratory distress, having both prescribed an inhaler and as-needed nebulizer treatments, and left open the possibility of receiving more treatments if his blood oxygen levels and respiratory distress support it. Thompson may disagree with this course of treatment, but his facts do not show that he is in imminent danger of serious physical injury.

Finally, Thompson has not been denied treatment for the injuries he allegedly incurred on December 21, 2017. He admits he has received treatment, but complains that it takes too long and others are given preference before him. He does not explain how the evaluations that he received were inadequate nor does he provide details that show that he requires immediate medical care or risk further serious physical injury, for an incident that occurred more than three months ago. That is, the facts do not show that Thompson has been denied necessary medical care for an emergent, imminent, serious physical danger. To the contrary, it appears that Thompson sees a nurse and reports to the medical station nearly daily. Thompson also fails to explain why he cannot explain to the medical providers who are allegedly confused as to why they are seeing him what his need for medical care is. Moreover, Thompson saw a doctor on December 31, 2017, and RN Charlotte on January 11, 2018. If he was experiencing such pain from the December 21, 2017 incident that he was in imminent danger of serious physical injury, he could have and should have raised this with either medical provider.

The Court has carefully reviewed Thompson's Complaint. Nothing within it supports a finding that Thompson was in imminent danger of serious physical injury when he commenced this action. Thompson's allegations are insufficient to qualify for § 1915(g)'s exception, and his IFP application is DENIED.

## IV. CONCLUSION

Thompson's request to proceed in forma pauperis is DENIED and this action is DISMISSED without prejudice to Thompson raising his claims in a new action with concurrent payment of the filing fee.  The Clerk is DIRECTED to close the case and note this dismissal is pursuant to 28 U.S.C. § 1915(g).

IT IS SO ORDERED.

DATED: April 2, 2018 at Honolulu, Hawaii.



/s/ Derrick K. Watson
Derrick K. Watson
United States District Judge

*Thad Thompson v. Nurse Rissa, et al.;* Civil No. 18-00098 DKW-KSC; **ORDER DENYING IN FORMA PAUPERIS APPLICATION AND DISMISSING ACTION**

*Thompson v. Nurse Rissa, et al.,* No. 1:18-cv-00098 DKW-KSC; 3 strikes '18 Thompson 18-98 dkw ('14 assault, '17 panic attack, '17 swat team).